UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR SMITH,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF ALAMEDA,<br><br>        Defendant. | Case No. 24-cv-03758-DMR<br><br>**ORDER ON MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

Plaintiff Trevor Smith filed a complaint against County of Alameda ("the County") alleging claims arising out of his July 2023 detention. The County moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss portions of the complaint. This matter is suitable for resolution without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is granted in part and denied in part.

**I.    BACKGROUND**

The complaint contains the following allegations, all of which are taken as true for purposes of this motion.[1] On July 3, 2023, Smith's neighbor sustained a self-inflicted gunshot wound. Smith "decided that it would be quicker if he drove his friend" to nearby Highland Hospital in Oakland, California. Smith pulled into the emergency room parking lot and informed a group of Alameda County Sheriff's deputies "that the person in his van had been shot." He alleges that his "innocuous attempt to render aid to his wounded neighbor" then turned "into a harrowing ordeal." Compl. ¶¶ 9-11, 15.

After the deputies took custody of Smith's neighbor, they "turned their attention" to Smith

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

and "began searching [his] van as they threw contents outside of the van." *Id*. at ¶ 12. Smith "walked towards his van to pick up an item with the intent of putting it back in the van. Without legal cause or justification, a male deputy grabbed [Smith] and began to batter him." *Id*. at ¶ 13. Smith alleges that "[t]he male deputy slammed [Smith] against the van and began questioning" him, including asking if Smith had any sharp objects on him. Smith works as an electrician and regularly carries a knife as part of his work equipment. At that moment, Smith did not know if he had a knife on his person and "hesitated before he answered the officer because he wanted to be sure that he told him the truth." *Id*. After Smith hesitated, "[t]he male deputy became angry" and threatened to arrest him. Smith then told the deputy that he did not have a knife. The deputy next asked Smith if "he had seen the gun," Smith answered in the affirmative, and the deputy asked Smith for the location of the gun. Smith told the deputy "that his wounded neighbor had thrown the gun into a trash can." When the deputy asked Smith for the color of the trash can, Smith responded that it "had a brown or green color. The deputy screamed at [Smith], 'Is it Brown or Green?!'" Smith alleges that "[i]n fear, and an attempt to stop the aggressive questions, [he] told the deputy that his friend threw the firearm in a brown can." *Id*. "Despite complying with the deputy and not displaying any attempts to flee, the deputy placed [Smith] in his patrol car and sat [Smith] in the car for what seemed like one hour." *Id*. Smith alleges he sustained physical and psychological injuries resulting from the incident. *Id*. at ¶ 15.

Smith sues the County and Does 1-50, alleging the following claims for relief: 1) a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment based on unlawful detention against Does 1-25; 2) a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment based on unlawful seizure against Does 1-25; 3) a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment based on excessive force against Does 1-25; 4) a 42 U.S.C. § 1983 claim for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against the County and Does 26-50; 5) violation of California's Bane Act, Cal. Civ. Code § 52.1, against the County and Does 1-25; 6) negligence against the County and Does 1-50; 7) battery against the County and Does 1-25; 8) false imprisonment against the County and Does 1-25; and 9) intentional infliction of emotional distress against the County and Does 1-25.

The County now moves to dismiss claims four through nine. *See* Mot. 1-2 (listing claims at issue).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation marks omitted) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions, that "plausibly give rise to an entitlement to relief." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quotations and internal citations omitted).

## III. DISCUSSION

The County moves to dismiss claims four through nine for failure to state a claim under Rule 12(b)(6). Smith did not respond to the motion to dismiss the *Monell* claim (claim four) and thus concedes it. The *Monell* claim is dismissed with prejudice.

### A. Bane Act

The Bane Act allows a claim for violation of a plaintiff's state or federal civil rights when the violation is achieved through "threats, intimidation, or coercion." Cal. Civ. Code § 52.1. To state a Bane Act claim, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference

3

was by threats, intimidation, or coercion." *Inman v. Anderson*, 294 F. Supp. 3d 907, 928 (N.D. Cal. 2018) (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)). "[T]he Bane Act does not require the threat, intimidation or coercion element of the claim to be transactionally independent from the constitutional violation alleged," but it does require "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017)). "Evidence simply showing that an officer's conduct amounts to a constitutional violation under an 'objectively reasonable' standard is insufficient to satisfy the additional intent requirement under the Bane Act." *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. 2018) (citing *Reese*, 888 F.3d at 1045) (granting summary judgment on Bane Act claim where plaintiff produced no evidence of defendant's intent to use more force than necessary under the circumstances). "Rather, [the plaintiff] must show that [the officer] 'intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances.'" *Id.* (quoting *Reese*, 888 F.3d at 1045). Specific intent may be shown through an officer's "reckless disregard of constitutional [or statutory] prohibitions or guarantees." *Cornell*, 17 Cal. App. 5th at 803.

Here, the complaint alleges that unnamed deputies "effectuated an unreasonable detention of [Smith] that became a seizure during its prolonged period" and that after "unlawfully detain[ing]" Smith they "proceeded to use unnecessary force against [him] without legal cause." Compl. ¶¶ 25, 28, 31. The County argues that the complaint fails to allege facts "that anyone intended to use unreasonable force in forcing [Smith] against the van, or acted with any particular purpose of depriving [Smith] of his right to freedom from unreasonable seizure." Mot. 12. Smith notes the County's argument that the complaint lacks allegations "that the unidentified deputy acted with a specific intent to violate Plaintiff's right against unreasonable seizure" and states only, "Defendant is mistaken." Opp'n 6. He otherwise does not respond to this argument and thus concedes it. *See id.* at 6-7. Accordingly, the Bane Act claim is dismissed with leave to amend.

4

### B. Negligence, Battery, and False Imprisonment Claims

The complaint alleges negligence, battery, and false imprisonment claims that are based on the same facts as the section 1983 claims for unlawful detention and excessive force. *See* Compl. ¶¶ 51-52, 56, 58-62. "Courts generally analyze these claims under the same rubric as § 1983 claims based on the Fourth Amendment." *Banks v. Mortimer*, 620 F. Supp. 3d 902, 935, n.13 (N.D. Cal. 2022) (citing *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1213 (9th Cir. 2011 (false arrest/false imprisonment); *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (battery); *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1048 (C.D. Cal. 2021) (negligence)).

A claim of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989). Courts analyze claims of excessive force under an "objective reasonableness" standard. *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 395). The reasonableness inquiry in excessive force cases is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

With respect to detentions, the Supreme Court set forth a three-tier structure of Fourth Amendment jurisprudence in *Terry v. Ohio*, 392 U.S. 1, 9 (1968). *See United States v. Erwin*, 803 F.2d 1505, 1508 (9th Cir. 1986) (summarizing *Terry*). In relevant part, "[t]he first tier consists of those law enforcement activities, such as police questioning conducted pursuant to valid consent, that do not constitute searches or seizures governed by the Fourth Amendment." *Erwin*, 803 F.2d at 1508. "The second tier consists of limited intrusions such as pat-downs of the outer clothing (or 'frisks') and brief investigative detentions. To justify these 'limited' searches and seizures, law enforcement officials must possess a reasonable, articulable suspicion that the suspect has recently committed a crime or is about to commit one." *Id.* During a so-called *Terry* stop, police officers are entitled to employ reasonable measures to protect themselves and others in potentially dangerous situations. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056-57 (9th Cir. 1995). However, "[i]nvestigative stops based upon suspicion short of probable cause are . . .

5

1  constitutionally permissible only where the means utilized are the least intrusive reasonably
2  available." *Kraus v. Pierce Cty.*, 793 F.2d 1105, 1108 (9th Cir. 1986).  "[A]n investigative
3  detention must be temporary and last no longer than is necessary to effectuate the purpose of the
4  stop.  Similarly, the investigative methods employed should be the least intrusive means
5  reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida*
6  *v. Royer*, 460 U.S. 491, 500 (1983).

Here, the complaint alleges after the deputies took Smith's wounded neighbor into custody, they turned their attention to Smith and one of the deputies "slammed" him against his van to question him.  Compl. ¶ 13.  It further alleges that the deputy used force "[w]ithout legal cause or justification," and that even though Smith complied with the deputy and did not "display[] any attempts to flee," the deputy placed Smith in the back of a patrol car "for what seemed like one hour."  The complaint alleges that these actions were "objectively unreasonable under the circumstances, without legal justification or other legal right."  *Id*. at ¶¶ 14, 16.

The County moves to dismiss these claims on the grounds that the complaint fails to show that the deputies' conduct, including their detention of Smith and use of force, was objectively unreasonable under the totality of the circumstances.  *See* Mot. 12-14.  According to the County, Smith's detention "was supported by reasonable suspicion" and thus lawful, and "his detention carried with it the right to use some degree of force to effect it."  *Id*. at 13.  In other words, the County disputes the merits of Smith's Fourth Amendment claims and argues that they fail as a matter of law, which is improper on a motion to dismiss.  While the complaint's allegations about the deputy's use of force and Smith's detention are not particularly detailed, the complaint sufficiently alleges that the deputies' actions, including detaining him in a patrol car for a significant period of time ("what seemed like one hour") even though he was fully compliant and made no attempt to flee, were "objectively unreasonable" given the circumstances and without legal justification.  The court concludes that the complaint states claims for negligence, battery, and false imprisonment based on the allegedly unconstitutional detention and use of force.

### C.  Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, a plaintiff must

allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress"; (2) that the plaintiff "suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme' as to exceed all bounds of that usually tolerated in a civilized community." *Id*. at 1051 (citations and quotation marks omitted). "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Id*. (quotation marks and citation omitted).

Here, the complaint does not allege "extreme and outrageous conduct [by the deputies] *with the intention of causing, or reckless disregard of the probability of causing*, emotional distress," or that Smith experienced "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Smith provides additional details about the circumstances of the detention, his emotional state during the incident, and the lingering effects of the incident in his opposition. *See* Opp'n 10. However, these facts are not alleged in the complaint, and "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The claim is dismissed with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the County's motion to dismiss is granted in part and denied in part. The *Monell* claim is dismissed with prejudice. The Bane Act and intentional infliction of emotional distress claims are dismissed with leave to amend. Any amended complaint must be filed by September 26, 2024.

**IT IS SO ORDERED.**

Dated: September 12, 2024

Donna M. Ryu
Chief Magistrate Judge

7